IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| KAPPA SIGMA FRATERNITY,<br>*Plaintiff,*<br><br>v.<br><br>RICHARD G. MILLER MEMORIAL<br>FOUNDATION,<br>*formerly Kappa Sigma Memorial Foundation,*<br>*Defendant.*<br><br>RICHARD G. MILLER MEMORIAL<br>FOUNDATION,<br>*formerly Kappa Sigma Memorial Foundation,*<br>*Counterclaim Plaintiff,*<br><br>v.<br><br>KAPPA SIGMA FRATERNITY,<br>*Counterclaim Defendant.* | CIVIL NO. 3:07CV00026<br><br>MEMORANDUM OPINION AND ORDER<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on a Motion to Dismiss (docket entry no. 14) filed by Plaintiff and Counterclaim Defendant Kappa Sigma Fraternity (the "Fraternity"). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Fraternity's motion seeks dismissal of portions of the Counterclaim filed by Defendant and Counterclaim Plaintiff Richard G. Miller Memorial Foundation (the "Foundation). For the reasons that follow, I will GRANT IN PART and DENY IN PART the Motion to Dismiss.

## I. BACKGROUND

This action is only the most recent skirmish in long-running battle between the Fraternity and the Foundation. In 1966 the Fraternity formed the Foundation, then known as the Kappa Sigma Memorial Foundation, as an alter ego to the Fraternity. Over time, however, the two organizations diverged, formally disassociating in 1974 and developing what appears to be a deep-seated animus toward one another. This hostility erupted into protracted litigation in the Virginia state courts after the Foundation decided in 1999 to sell certain real property that the Fraternity had for many years used as its headquarters. In 2005, the parties reached a settlement agreement that brought an end to the state court litigation.

In May 2007, the Fraternity filed the instant lawsuit against the Foundation, alleging trademark infringement and other violations of the Lanham Act, as well as related common law claims. In July, the Foundation renamed itself the Richard G. Miller Memorial Foundation and counterclaimed against the Fraternity, alleging defamation per se and breach of contract. The latter claim is based on a non-disparagement clause in the 2005 settlement agreement (the "Agreement"), which in relevant part states: "The Parties agree, on behalf of themselves as entities and their respective Board members, elected officers and employees, that neither will disparage, criticize nor impugn the integrity or motivation of the other or any of their respective Board members or employees . . . ."[1] (Mem. Opp'n Mot. Dismiss, Ex. 1 at ¶ 7.) The factual bases for the Foundation's claims of defamation per se and breach of contract are three resolutions passed by the Fraternity at its July 2007 "Grand Conclave" and numerous messages published on "Bologna1400," an internet listserve for members of the Fraternity.

---

[1] Notably, the non-disparagement clause explicitly does not apply to "any action by either party to enforce [the] Agreement." (Mem. Opp'n Mot. Dismiss, Ex. 1 at ¶ 7.)

The Fraternity responded to the Foundation's Counterclaim with the Motion to Dismiss that is presently before the Court.

## II. STANDARD OF REVIEW.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (alteration in original omitted) (citations omitted) (internal quotation marks omitted). Instead, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"; plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Id.* at 1974. As the Fourth Circuit has held, a plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006).

## III. DISCUSSION

The Fraternity seeks dismissal of some, though not all, of the Foundation's claims. I will address the Fraternity's arguments with respect to each of the two bases for the Foundation's claims, the 2007 resolutions and the listserve messages, in turn.

### A. The 2007 Resolutions

The Foundation does not dispute that Resolution No. 1, titled "Endowment Fund," and Resolution No. 3, titled "Intellectual Property Infringement," are not independently actionable. Accordingly, to the extent that the Counterclaim raises claims of defamation per se and breach of contract with respect to Resolutions No. 1 and No. 3, those claims will be dismissed. Furthermore, I find, and the Foundation does not dispute, that the Counterclaim fails to allege sufficient facts to state a claim of defamation per se based on Resolution No. 2, titled "Prohibited Membership Organization." Principally, the Counterclaim fails to allege that Resolution No. 2 contains any false statement of fact, as required under Virginia defamation law. *See Gazette, Inc. v. Harris*, 325 S.E.2d 713, 724–25 (Va. 1985). Accordingly, to the extent that the Counterclaim raises a claim of defamation per se regarding Resolution No. 2, that claim will be dismissed.

Thus, the remaining issue with respect to the 2007 resolutions is whether the Counterclaim states valid claim for breach of contract based on Resolution No. 2. Under Virginia law, which by its terms governs the Agreement (Mem. Opp'n Mot. Dismiss, Ex. 1 at ¶ 13), the elements of a claim for breach of contract are: (1) a duly executed and enforceable agreement; (2) the plaintiff's performance, or offers to perform, in accordance with the terms of the contract; (3) the defendant's breach or failure to perform under the agreement; and (4) actual damages sustained by the plaintiff that are recoverable under Virginia law. *Carley Capital*

*Group v. Newport News*, 709 F. Supp. 1387, 1396 (E.D. Va. 1989). The Foundation has alleged the existence of each of these four elements, and only the issue of whether the Fraternity breached the non-disparagement clause of the Agreement is presently in dispute.

According to the Fraternity, Resolution No. 2 "simply articulates that . . . the Fraternity and the Foundation are completely separate organizations with different interests, and that . . . the attendees at the Fraternity's 'Grand Conclave' . . . considered membership in the Foundation to be incompatible with membership in the Fraternity." (Mem. Supp. Mot. Dismiss 7.) According to the Foundation, however, Resolution No. 2 "openly declare[s] the Foundation to be a renegade organization" (Countercl. ¶ 9) and therefore violates the non-disparagement clause. In relevant part, Resolution No. 2 states the following:

> WHEREAS, the Constitution, By-Laws and Rules of Kappa Sigma Fraternity, authorize the Supreme Executive Committee to designate certain organizations as "Prohibited Memberships" for organizations for which membership in or support of is inconsistent with the principles and values of Kappa Sigma Fraternity; and
> . . . .
> WHEREAS, this 66th Grand Conclave wishes to express that membership in or providing support to Kappa Sigma Memorial Foundation represents conduct unbecoming a Kappa Sigma;
> NOW THEREFORE, BE IT RESOLVED, that this 66th Grand Conclave directs the Supreme Executive Committee to designate Kappa Sigma Memorial Foundation, or any successor thereto, as a Prohibited Membership . . . ; and
> BE IT FURTHER RESOLVED, that this 66th Grand Conclave directs the Supreme Executive Committee to take disciplinary action . . . against any member being a member of, or providing support to, Kappa Sigma Memorial Foundation, or any successor thereto, including, without limitation, directing that appropriate charges be filed by officers or members of Kappa Sigma Fraternity against any such members.

(Mem. Supp. Mot. Dismiss, Ex. A.)

Taking the Counterclaim's allegation in the light most favorable to the Foundation, I find that Resolution No. 2 could be interpreted by a reasonable person as at least implicitly disparaging, criticizing, or impugning the Foundation. The resolution strongly implies that

membership in or support of the Foundation "is inconsistent with the principles and values of [the] Fraternity." Moreover, it states explicitly "that membership in or providing support to [the] Foundation represents conduct unbecoming a Kappa Sigma" and warranting "disciplinary action." Under these circumstances, the Foundation's claim is not subject to dismissal under Rule 12(b)(6); to rule otherwise I would have to draw inferences adverse to the Foundation, which is inappropriate at this stage of the case. *See Edwards*, 178 F.3d at 244; *Warner*, 149 F. Supp. 2d at 254–55. Accordingly, I will deny the Fraternity's motion to dismiss with respect to the Foundation's breach of contract claim regarding Resolution No. 2.

### B. The Bologna1400 Listserve Messages

The Fraternity argues, and the Foundation concedes, that defamation per se claims based on the listserve messages described in paragraphs 19 and 29 of the Counterclaim are time-barred because the one-year statute of limitations had already expired with respect to those messages before the Counterclaim was filed. Accordingly, those claims will be dismissed.

The Fraternity also argues that statements made on the Bologna1400 listserve by "rank and file" members cannot give rise to a cause of action against the Fraternity because the Fraternity cannot be held vicariously liable for such statements.[2] The Fraternity concedes, however, that vicarious liability would attach if the Foundation could "establish that the Fraternity authorized or ratified . . . the alleged statements by 'rank and file' members . . . ." (Mem. Supp. Mot. Dismiss 10.)

To this end, the Foundation has alleged that the Fraternity members who allegedly posted defamatory and/or disparaging statements did so as agents of the Fraternity and within the scope

---

[2] It is not entirely clear which statements the Fraternity attributes to "rank and file" members—at one point in their brief they cite paragraphs 19 and following of the Counterclaim (Mem. Supp. Mot. Dismiss 8), but later they also include paragraphs 15 through 18 (*id.* at 9–10).

of their agency.³ (Countercl. ¶¶ 1, 33.) Moreover, the Foundation has alleged that "the Fraternity has directed a campaign hostile to the Foundation, through which the Fraternity and its leadership have issued, ratified and encouraged the issuance of disparaging and defamatory statements concerning the Foundation and its board." (Mem. Opp'n Mot. Dismiss 7 (citing Countercl. ¶¶ 1, 11–31).) Among the facts alleged in support of this claim are the following: (1) that the Fraternity and its officers have fostered hostility amongst the members toward the Foundation through, among other things, the three resolutions passed at the 2007 Grand Conclave; (2) that the Bologna1400 listserve is used exclusively by Fraternity members and that elected officers of the Fraternity actively participate in the listserve; and (3) that numerous past and present Fraternity officers have participated both in publishing and encouraging the publishing of disparaging messages on the listserve.

Whether the Foundation will ultimately be able satisfy its burden of proving its allegations remains open to question, if not skepticism. Nevertheless, I find that the allegations of the Counterclaim, assuming that they are true and viewing them in the light most favorable to

---

³ The Foundation argues that the existence of a principal-agent relationship and action within the scope of the agency is itself sufficient to establish the Fraternity's vicarious liability. This argument for vicarious liability appears to rest on a theory of respondeat superior. It is worth noting, however, that according to the Restatement of Agency, respondeat superior liability applies only to master-servant (i.e., employer-employee) relationships, which are a subset of general principal-agent relationships. *See* Restatement (Second) of Agency §§ 2 cmt. a, 219(1) & cmt. a. This is not to say that a principal can never be vicariously liable for the actions of a non-employee agent, but the distinction is of some significance under the Restatement. *Compare, e.g., id.* § 247 ("A master is subject to liability for [even unauthorized] defamatory statements made by a servant acting within the scope of his employment, or, as to those hearing or reading the statement, within his apparent authority."), *with id.* § 254 ("A principal is subject to liability for a defamatory statement by a servant or other agent if the agent was authorized, or if, as to the person to whom he made the statement, he was apparently authorized to make it.").
  It is not entirely clear, however, whether Virginia law follows the Restatement in this regard. The Foundation has cited at least one Virginia case in which the terms "principal" and "agent" are used to describe the respondeat superior test, *see Jefferson Standard Life Ins. Co. v. Hedrick*, 27 S.E.2d 198, 202 (Va. 1943), but the others it cites use the terms "master" and "servant" or "employer" and "employee," *see Kidwell v. Sheetz, Inc.*, 982 F. Supp. 1177, 1187 (W.D. Va. 1997); *Majorana v. Crown Cent. Petroleum Corp.* 539 S.E.2d 426, 429 (Va. 2000); *Plummer v. Ctr. Psychiatrists, Ltd.*, 476 S.E.2d 172, 174–75 (Va. 1996); *Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 453 S.E.2d 261, 266 (Va. 1995); *Tri-State Coach Corp. v. Walsh*, 49 S.E.2d 363, 366 (Va. 1948). Moreover, *all* of the cases the Foundation cites on this point appear to have arisen in the employment context. Though I need not decide the issue at this time, the weight of authority would appear to suggest that the mere existence of a non-employment principal-agent relationship and wrongful conduct by the agent within the scope of the agency would not itself be sufficient to impose vicarious liability on the Fraternity.

the Foundation, could show that the "rank and file" members who allegedly disparaged and defamed the Foundation did so as agents of the Fraternity and with actual authority, apparent authority, or subsequent ratification. *See Twombly*, 127 S. Ct. at 1965 ("[F]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Accordingly, I will deny the Fraternity's motion to dismiss with respect to the listserve messages allegedly published by "rank and file" members.

## IV. CONCLUSION

For the foregoing reasons, the Fraternity's Motion to Dismiss (docket entry no. 14) is hereby GRANTED IN PART and DENIED IN PART. The following claims raised in the Foundation's Counterclaim are hereby DISMISSED:

1. breach of contract with respect to Resolution Nos. 1 and 3;
2. defamation per se with respect to Resolution Nos. 1, 2, and 3;
3. defamation per se with respect to paragraphs 19 and 29 of the Counterclaim.

With respect to all other claims raised in the Foundation's Counterclaim, the Fraternity's Motion to Dismiss is hereby DENIED.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and Order to all counsel of record.

Entered this 20th day of February, 2008.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE